UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

MICHAEL PALMER,

               *Plaintiff*,

       -*against*-

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

               *Defendant*.

---------------------------------X

**MEMORANDUM AND ORDER**

19-CV-5170(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

       Michael Palmer ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or the "Commissioner"), which found that plaintiff was not disabled within the meaning of the Social Security Act (the "Act") and, therefore, was not eligible for disability insurance benefits under Title II of the Act.  Plaintiff contends that he is disabled under the Act and is thus entitled to receive benefits.

       Presently before the court are the parties' cross-motions for judgment on the pleadings.  For the reasons herein, plaintiff's motion is GRANTED, defendant's motion is DENIED, and the case is REMANDED for further proceedings consistent with this Memorandum and Order.

## Background

The parties in this case have filed a joint stipulation of relevant facts, which the court incorporates by reference. (*See generally* ECF No. 23-1, Joint Stipulation of Facts.) The court will recount the factual background here only to the extent such facts are relevant to the pending motions.

Plaintiff was born in 1971 and applied for benefits in 2007. Plaintiff's alleged disability, since 2002, is related primarily to chronic back and neck pain caused by bulging and herniated discs. (*See id.* at 2-18.) Plaintiff also reported pain and occasional swelling of his knees, back, and left shoulder following a car accident in 2002. (*Id.* at 13.)

Plaintiff's back, knee, and shoulder problems were documented by several MRIs between 2002 and 2006. A May 29, 2002 MRI of plaintiff's lumbosacral spine revealed exaggerated lumbar lordosis, rotatory scoliosis convex towards the left, bulging discs at L2-L3 and L3-L4, herniated discs towards the left and laterally indenting the thecal sac and the left L5 nerve root, bulging discs at L5-S1, and narrowed neural foramina levels at L3-S1. (ECF No. 24, Administrative Transcript ("Tr."), at 384.) A June 4, 2002 MRI of plaintiff's spine also revealed several more herniated discs. (*Id.* at 383.) A September 6, 2002 MRI of plaintiff's right knee revealed linear type II signal abnormality, posterior horn medial meniscus,

2

clubbing deformity body, focal signal abnormality posterior horn lateral meniscus and clubbing deformity, partial tear at the fibular collateral ligament, and joint effusion.  (*Id.* at 386.) An October 25, 2006 MRI of plaintiff's left shoulder revealed tendinosis of the supraspinatus tendon with a focal full thickness near about its insertion site to the greater tuberosity, and OS acromiale.  (*Id.* at 385.)

The record is devoid of treatment notes from October 2007 to March 2014.  (*Id.* at 16.)  During part of that time, plaintiff was treated by Dr. Leonard A. Langman.  (*Id.* at 37-38.)  In 2011, Dr. Langman was convicted of billing fraud. (*Id.*)  He subsequently closed his practice and no records from the practice were available to plaintiff or the Commissioner. (*Id.*)

**I.  Relevant Medical Opinions**

Due in part to the unique and lengthy procedural history of this case, which will be discussed *infra*, the various medical opinions available in the record span a decade, from 2007 to 2017.  The opinions relevant to the parties' arguments are summarized briefly here.

A. Dr. Mohammed Iqbal (Consultative Examiner)

On August 8, 2007, Dr. Mohammed Iqbal conducted a consultative orthopedic examination of plaintiff.  (*Id.* at 352.) Plaintiff's chief complaint to Dr. Iqbal was neck pain

3

aggravated by movement, and plaintiff also recounted his previous MRIs showing herniated discs. (*Id.*) Dr. Iqbal observed that plaintiff was in no acute distress, walked with a slow gait and a cane, and Dr. Iqbal noted mild instability without the cane. (*Id.* at 353.) Plaintiff's station was normal, and he needed no help changing or getting on and off the examination table. (*Id.*) He was able to rise from his chair slowly, with mild difficulty. (*Id.*) Dr. Iqbal opined that plaintiff had no limitations when sitting, moderate limitations with prolonged walking with a cane, and moderate to severe limitations walking without a cane. (*Id.* at 355.) He also opined that plaintiff had moderate limitations with lifting mild weight, and that plaintiff should avoid prolonged standing and walking, frequent bending, and heavy lifting. (*Id.*)

      B. Dr. W. Jaruch (Non-Examining State Agency Consultant)

On August 15, 2007, a state agency physician completed a residual functional capacity assessment form for the state of New York. (*Id.* at 356-61.) Dr. Jaruch's completion of the form was based primarily on a review of treatment notes provided by Dr. Iqbal and Dr. Langman. (*Id.*) Dr. Jaruch opined that plaintiff could occasionally lift up to ten pounds, and frequently lift less than ten pounds. (*Id.* at 357.) Dr. Jaruch further opined that plaintiff could stand or walk for at least two hours in an eight-hour workday, sit for about six hours in

an eight-hour workday, and had unlimited ability to push and
pull.  (*Id.*)

     C. <u>Dr. Jenny Torres (Consultative Examiner)</u>

     On October 2, 2015, Dr. Jenny Torres conducted a
consultative internal medicine examination of plaintiff.  (*Id.*
at 399.)  Dr. Torres observed that plaintiff was in no acute
distress.  (*Id.* at 400.)  Plaintiff had a normal gait and was
able to heel-toe walk without difficulty.  (*Id.*)  His stance was
normal, his squat was full, he did not use an assistive device,
and he did not need assistance changing or getting on or off the
examination table.  (*Id.*)  Dr. Torres diagnosed plaintiff with
herniated discs in the lower back and cervical spine, a left
knee meniscus tear, hypertension, and hyperlipidemia.  (*Id.* at
401.)  Dr. Torres opined that plaintiff had mild restrictions
for heavy lifting and carrying, but that plaintiff had no other
restrictions.  (*Id.* at 402.)

     Dr. Torres attached to her consultative exam report an
unsigned medical source statement, in which she indicated that
plaintiff could sit and stand for a total of one hour without
interruption, and walk for 30 minutes at a time without
interruption.  (*Id.* at 404.)  Dr. Torres opined that plaintiff
could sit for a total of six hours, stand for three hours, and
walk for two and a half hours in an eight-hour workday; and that
plaintiff did not require a cane to walk.  (*Id.* at 404.)  Dr.

Torres further opined that plaintiff could frequently carry up to 20 pounds, and continuously carry up to ten pounds, but he could never carry more than that. (*Id.* at 403.)  Lastly, Dr. Torres opined that plaintiff could occasionally balance, stoop, kneel, crouch, and crawl, and he could perform the activities of daily living, including traveling without assistance, using public transportation, preparing simple meals, and caring for his personal hygiene. (*Id.* at 406-08.)

### D. Dr. Isaac Kreizman (Treating Physician)

Dr. Isaac Kreizman began treating plaintiff in the fall of 2015 for neck, ankle, and lower back pain, and headaches. (*Id.* at 563-75.)  Dr. Kreizman diagnosed plaintiff with lower back pain, lumbar radiculopathy, and gait disorder. (*Id.* at  571, 575.)  In December 2015, Dr. Kreizman provided plaintiff with two Lidocaine injections. (*Id.* at 567.)  On April 5, 2016, Dr. Kreizman diagnosed plaintiff with sacroiliitis. (*Id.* at 561.)  Plaintiff attended follow-up appointments with Dr. Kreizman on multiple occasions in 2016. (*Id.* at 542-58.)

On November 28, 2016, Dr. Kreizman completed a medical source statement, opining that plaintiff could sit, stand, and walk for a total of 15 minutes at a time, for a total of one hour in an eight-hour workday. (*Id.* at 610.)  He noted that plaintiff did not need an assistive device. (*Id.*)  Dr. Kriezman

6

also opined that plaintiff could occasionally lift up to ten
pounds, and plaintiff could occasionally balance, stoop, reach,
handle, and finger.  (*Id.* at 611.)

     E. Dr. Christel Moran (Local Agency Examiner)

       In June 2016, Dr. Christel Moran examined plaintiff in
connection with plaintiff's application for welfare benefits.
(*Id.* at 501.)  Dr. Moran noted that plaintiff required
vocational rehabilitation, and that he was able to work part-
time so long as the work was routine and low stress.  (*Id.* at
504.)  Dr. Moran assessed that plaintiff's work limitations
should include limited standing, bending, stooping, lifting,
carrying, and reaching.  (*Id.*)  She also opined that plaintiff
would require work that allowed a change in position, avoided
heavy lifting and carrying, as well as a setting with limited
noise and people.  (*Id.*)

     F. Dr. Lyudmila Trimba (Consultative Examiner)

       On January 11, 2017, Dr. Lyudmila Trimba conducted a
consultative internal medicine examination of plaintiff.  (*Id.*
at 614-28.)  Dr. Trimba observed that plaintiff's gait was slow,
but normal, though he could not heel-toe walk due to pain.  (*Id.*
at 616.)  Plaintiff did not need an assistive device to walk,
did not need help changing for the examination, or any help
getting on and off the examination table.  (*Id.* at 616-17.)
Plaintiff's cervical spine showed full flexion, extension,

lateral flexion bilaterally, and full rotary movement
bilaterally.  (*Id.*)  Plaintiff complained of pain while
performing range of motion of the cervical spine.  (*Id.*)
Plaintiff had full range of motion in his arms, hips, knees, and
ankles, though with pain in certain areas.  (*Id.*)

Dr. Trimba opined that plaintiff was mildly to
moderately limited in his abilities to: sit, stand, walk for a
prolonged period of time, climb steps, push, pull, or carry
heavy objects.  (*Id.* at 618.)  Dr. Trimba further opined that
plaintiff should avoid frequent bending, squatting, and
kneeling.  (*Id.*)  Dr. Trimba also assessed the following
functional limitations: plaintiff could sit for an hour without
interruption, stand for 30 minutes without interruption, walk
for 20 to 30 minutes without interruption, sit for a total of
four hours, stand or walk for a total of two hours in an eight-
hour workday, and occasionally lift and carry up to 20 pounds.
(*Id.* at 619-20.)  She opined that plaintiff did not require a
cane to ambulate.  (*Id.* at 620.)  Dr. Trimba also opined that
plaintiff could never climb stairs, balance, stoop, kneel,
crouch, or crawl, or work at unprotected heights, or with moving
mechanical parts.  (*Id.* at 622-23.)  Dr. Trimba opined that
plaintiff could perform the activities of daily living, such as
shopping, traveling alone, ambulating without assistance, and

preparing a simple meal, but he could not walk a block on rough or uneven surfaces. (*Id.* at 624.)

## II.  Procedural History

Plaintiff applied for benefits on June 1, 2007, alleging disability since April 28, 2002.  His application was denied. (*Id.* at 114-117.)  Subsequently, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and on October 20, 2009, he appeared before ALJ Michael Dominic Cofresi. (*Id.* 65-80.)  ALJ Cofresi upheld the Commissioner's denial of plaintiff's claim on November 2, 2009. (*Id.* at 90-100.)  On May 12, 2011, the Appeals Council declined to grant review of the ALJ's denial. (*Id.* at 101-06.)

However, on October 18, 2013, Judge Carol Bagley Amon in this District approved a class action settlement in *Padro et al. v. Colvin*, a lawsuit against the Commissioner that alleged bias on the part of certain ALJs, including ALJ Cofresi. (*Id.* at 189-197.)  The Commissioner denied any wrongdoing by the ALJs, but as a result of the settlement, any claimant whose claim was denied after a hearing before one of the relevant ALJs was entitled to a new hearing. (*Id.*)

Plaintiff participated in and testified at a second hearing before ALJ Elias Feuer on November 29, 2016, at which vocational expert Christina Boardman also testified. (*Id.* at 32-80.)  On August 1, 2018, ALJ Feuer issued a decision finding

that plaintiff was not disabled.  (*Id.* at 9-27.)  On April 15, 2019, the Appeals Council denied plaintiff's request for review, rendering ALJ Feuer's decision the final decision of the Commissioner.  (*Id.* at 1-5, 233-6.)  After the Appeals Council granted plaintiff's request for additional time to file a civil action, this action in federal court followed.  (*See generally* ECF No. 1, Complaint.)

### Legal Standard

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court, reviewing the final decision of the Commissioner, must determine whether the correct legal standards were applied, and whether substantial evidence supports the decision.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).  "Substantial evidence is 'more than a mere scintilla,'" and must

10

be relevant evidence that a "'reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).  Inquiry into legal error requires the court to ask whether the plaintiff has "had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 10 (2d Cir. 1990) (second alteration in original)).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

        To receive disability benefits, a claimant must be "disabled" within the meaning of the Act.  *See* 42 U.S.C. § 423(a), (d).  A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d

11

126, 131–32 (2d Cir. 2000).  The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work.  42 U.S.C. § 423(d)(2)(A).  "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'"  *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  This process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *see also* 20 C.F.R. § 404.152(a)(4).

12

During this five-step process, the Commissioner must consider whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits."  20 C.F.R. § 404.1523.  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  In steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

Lastly, a court reviewing final decisions of the Commissioner is explicitly authorized to order further proceedings when appropriate.  42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").  Remand is warranted

13

where "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.

## Discussion

### I.   The Relevant ALJ Decision

ALJ Feuer applied the five-step sequential framework for determining disability, and concluded that plaintiff was not disabled.  (Tr. at 22.)  At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his application date of June 1, 2007.  (*Id.* at 14.)  At step two, the ALJ found that plaintiff suffered from the following "severe" impairments: discogenic and degenerative back disorder, and neuralgia neuritis.  (*Id.*)  At step three, the ALJ found that plaintiff's conditions did not meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 14-15.)

The ALJ then found that plaintiff had the RFC to perform "light work," which under the Commissioner's regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and "a good deal of walking or standing, or . . .

14

sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).  Beyond the defined limitations of "light work," the ALJ also found that plaintiff was limited to lifting and carrying up to only 15 pounds occasionally, and was able to stoop, kneel, crouch and crawl occasionally.  (Tr. at 15.)

In determining plaintiff's RFC, the ALJ gave "some" but "not great weight" to the opinions of the consultative orthopedist, Dr. Iqbal, which were that plaintiff had no limitations in sitting, moderate limitations for prolonged walking with a cane, severe limitations walking without one, and moderate limitations lifting mild weight.  (*See id.* at 353-55.) The ALJ gave these opinions only "some" weight for three reasons: (1) the ALJ found that "moderate to severe" limitations were not supported by Dr. Iqbal's own physical examination; (2) the record lacked other medical records from 2007 to March 2014, so the opinions were not supported by contemporaneous records; and (3) Dr. Iqbal "apparently relied quite heavily" on plaintiff's own reports of his need for a cane.  (*Id.* at 17.)

The ALJ assigned "little weight" to the 2007 non-examination assessment by Dr. Jaruch, the state agency consultant, who opined that plaintiff could only occasionally lift up to ten pounds.  (*See id.* at 356-61.)  The ALJ reasoned that additional evidence was produced later, and Dr. Jaruch's

opinion was based only on a one-time review of the "sparse" medical file that existed at that time.  (*Id.*)

The ALJ gave "great weight" to consultative internist Dr. Torres's 2015 opinios that plaintiff had normal range of motion, because it was consistent with the medical evidence. (*Id.* at 17-18.)  However, the ALJ gave only "some weight" to Dr. Torres's opinion regarding plaintiff's limitations for standing and walking, finding those limitations were inconsistent with the record.  (*Id.* at 18.)

The ALJ gave "little weight" to treating physician Dr. Kreizman's 2016 opinions that plaintiff could only sit, stand, and walk for 15 minutes at a time, and could only lift up to ten pounds occasionally.  (*See id.* at 610-11.)  The ALJ found that the functional limitations noted by Dr. Kreizman were inconsistent with the record as a whole, and noted that Dr. Kreizman's opinions were only relevant to the time period after he began treating plaintiff in 2015.  (*Id.* at 19.)

The ALJ gave "little weight" to Dr. Moran's 2016 assessment, finding that it was "ambiguous," and because it was based on a one-time assessment for the purpose of determining whether plaintiff had to comply with work requirements in order to receive welfare benefits, rather than resulting from a normal course of medical treatment.  (*Id.* at 18.)

The ALJ gave "little weight" to consultative internist Dr. Trimba's January 2017 opinions that plaintiff had moderate limitations in his ability to sit, stand, walk, push, pull, and carry heavy objects, and that plaintiff could only sit for one hour and stand for 30 minutes without interruption. (*See id.* at 618-24.)  The ALJ assigned Dr. Trimba's opinions "little weight" because: (1) they were inconsistent with the record as a whole; (2) plaintiff did not have an MRI on his back since 2002; and (3) they were inconsistent with objective examinations in the record that failed to support the opinions regarding functional limitations. (*Id.* at 19.)

The ALJ also found that plaintiff's own testimony regarding his symptoms and daily activities had little value, because of purported inconsistencies with the facts that he participated in part-time computer training, part-time modified work activity (which was mandated by the local welfare agency), and part-time job searches. (*Id.*)  The ALJ also discounted plaintiff's statements because his treatment was "conservative" and "routine," his trips to the doctor were "relatively infrequent," and his reliance on a cane was inconsistent with Dr. Trimba's findings about the cane. (*Id.* at 20.)

The ALJ also noted that plaintiff only worked "sporadically" in 2000 and 2001 (prior to the alleged onset of

17

his disability in 2002), suggesting that his lack of employment was not "actually due to medical impairments." (*Id.*)

At step four, the ALJ found that plaintiff had no past relevant work experience. (*Id.*) At step five, based on the RFC determination and the testimony of the vocational expert, the ALJ found that plaintiff was capable of light, unskilled jobs, such as working as a cashier, routing clerk, or ticket seller. (*Id.* at 21.) Accordingly, the ALJ found that plaintiff was not disabled under the Act. (*Id.* at 21-22.)

## II. The ALJ's RFC Determination Was Contradicted by the Weight of the Medical Opinion Evidence

Plaintiff first argues that the ALJ impermissibly substituted his own judgment for that of the medical professionals when he found that plaintiff could perform "light work," with certain additional limitations. (*See* ECF No. 21, Plaintiff's Memorandum of Law ("Pl. Mem."), at 6-9.)

"[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir.1983)). "While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own

expertise against that of a physician who submitted an opinion to or testified before him." *Id.* (alterations omitted).

Here, the ALJ found that plaintiff could perform "light work," "except [that] he [was] limited to lifting and carrying up to 15 pounds occasionally with stooping, kneeling, crouching and crawling, all limited to occasional." (Tr. at 15.)  Though the ALJ noted these additional limitations in plaintiff's ability to lift, carry, stoop, kneel, crouch, and crawl, he did not note any additional limitations in plaintiff's ability to walk, stand, sit, push, or pull.  "Light work" ordinarily "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 416.967(b).

Although the medical opinion evidence in the record varied somewhat with regard to plaintiff's abilities to walk, stand, and sit, nearly all of the doctors noted at least *some* limitations in his ability to do so.  (*See supra* at 3-8.)  Dr. Iqbal observed that plaintiff had moderate limitations with prolonged walking with a cane, moderate to severe limitations walking without a cane, and that plaintiff should avoid prolonged standing and walking.  Dr. Torres opined that, although plaintiff could walk without a cane, he could sit for only a total of six hours, stand for three hours, and walk for two and a half hours in an eight-hour workday.  Dr. Kreizman,

19

plaintiff's treating physician, opined that plaintiff could sit,
stand, and walk for 15 minutes at a time, for a total of one
hour in an eight-hour workday.  Dr. Moran, while assessing that
plaintiff could perform part-time work, noted that the work
should include limited standing.  Dr. Trimba opined that
plaintiff was mildly to moderately limited in his abilities to
sit, stand, and walk for a prolonged period of time, and that he
could sit for only one hour, stand for only 30 minutes, and walk
for only 20 to 30 minutes without interruption.

  "The full range of light work requires intermittently
standing or walking for a total of approximately [six] hours of
an [eight]-hour workday, with sitting occurring intermittently
during the remaining time." *Poupore v. Astrue*, 566 F.3d 303,
305 (2d Cir. 2009).  None of the medical opinions in the record
support a finding that plaintiff could stand or walk for six
hours during the workday. *See Higgins v. Berryhill*, No. 17-cv-
5747 (OTW), 2018 WL 6191042, at *22 (S.D.N.Y. Nov. 28, 2018)
(remanding where "the ALJ has failed to cite to any medical
opinion that concluded that Plaintiff could do light work").
Moreover, the ALJ did not make any specific findings regarding
how long plaintiff could stand or walk.  The court, therefore,
finds that the ALJ's determination that plaintiff could perform
"light work," without any consideration of additional

limitations for walking, standing, and potentially also sitting, was not supported by substantial evidence.

## III. The ALJ Failed to Properly Apply the Treating Physician Rule

Next, plaintiff contends that the ALJ failed to properly apply the treating physician rule by assigning only "little weight" to Dr. Kreizman's opinions that plaintiff could only sit, stand, and walk for 15 minutes at a time, and could only lift up to ten pounds occasionally. (*See* Pl. Mem. at 9-13.)

Under the regulations in place at the time plaintiff filed his claim, the ALJ was to "defer 'to the views of the physician who has engaged in the primary treatment of the claimant.'" *Cichocki v. Astrue*, 534 F. Appx. 71, 74 (2d Cir. 2013) (quoting *Green-Younger*, 335 F.3d at 106).[1] "However, '[a] treating physician's statement that the claimant is disabled cannot itself be determinative.'" *Id.* (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). "Rather, 'a treating

---

[1] The Commissioner has revised its rules to eliminate the treating physician rule, and ALJs are now to weigh all medical evaluations, regardless of their sources, based on how well supported they are and their consistency with the remainder of the record. *See* 20 C.F.R. §§ 404.1520b; 416.920c. Claims filed before March 27, 2017, however, are still subject to the treating physician rule. *See* 20 C.F.R. § 404.1527(c)(2). Plaintiff applied for benefits in 2007. Accordingly, the court applies the treating physician rule in the instant case. *See, e.g.*, *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

source's opinion on the issue(s) of the nature and severity of
[a claimant's] impairment(s)' will be given 'controlling weight'
if the opinion is 'well-supported by medically acceptable
clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in [the
claimant's] case record.'" *Id.* (quoting 20 C.F.R. §
404.1527(c)(2)); *see also Burgess*, 537 F.3d at 128 (describing
this principle as the "treating physician" rule).  A treating
source is defined as a plaintiff's "own physician, psychologist,
or other acceptable medical source" who has provided plaintiff
"with medical treatment or evaluation and who has, or has had,
an ongoing treatment relationship with [the plaintiff]."  20
C.F.R. § 404.1502; *see also Bailey v. Astrue*, 815 F. Supp. 2d
590, 597 (E.D.N.Y. 2011) ("A treating source's medical opinion
on the nature and severity of an impairment is given controlling
weight when it is supported by medically acceptable clinical and
laboratory diagnostic techniques and is not inconsistent with
other substantial evidence in the record.").  Medically
acceptable clinical and laboratory diagnostic techniques include
consideration of a "patient's report of complaints, or history,
[as] an essential diagnostic tool." *Green-Younger*, 335 F.3d at
107.

When a treating physician's opinion is not afforded
controlling weight, the ALJ must "comprehensively set forth

22

reasons for the weight assigned to a treating physician's opinion." *Halloran*, 362 F.3d at 33; *see also* 20 C.F.R. § 416.927(c)(2) (requiring the Commissioner to "always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's medical opinion").  The Commissioner's regulations enumerate several factors that may guide an ALJ's determination of what weight to give to a treating source's opinion: (1) the length, frequency, nature, and extent of the treating relationship, (2) the supportability of the treating source opinion, (3) the consistency of the opinion with the rest of the record, (4) the specialization of the treating physician, and (5) any other relevant factors.  20 C.F.R. § 416.927(c)(2)-(6).  The ALJ is not required to cite each factor explicitly in the decision, but must ensure he applies the substance of the rule.  *Halloran*, 362 F.3d at 32. The regulations also require that the ALJ "always give good reasons" in determining the weight assigned to the claimant's treating source's opinion.  *See* 20 C.F.R. § 416.927(c)(2); *see also Schaal*, 134 F.3d at 503.

Here, the ALJ gave "little weight" to the opinions of Dr. Kreizman, who treated plaintiff on multiple occasions in 2015 and 2016.  (*See* Tr. at 19.)  The ALJ found that Dr. Kreizman's opinions were "inconsistent with the records as a whole, which reveal[ed] improvement in 2016 and the ability to

ambulate without a cane," and noted that Dr. Kreizman's "opinion[s] only date[d] back to 2015, which [left] the prior period unopined." (*Id.* at 18–19.)  That was the extent of the reasoning provided by the ALJ for discounting Dr. Kreizman's opinions.

The Commissioner argues that the ALJ's reasons for discounting Dr. Kreizman's opinions, which were that they were only relevant to the time period after he began treating plaintiff in 2015 and that they were inconsistent with the other treatment records available, were sufficiently good reasons. (*See* ECF No. 22, Defendant's Reply Memorandum, at 4–6.)  The court does not agree.  Though there was medical opinion evidence in the record that contradicted the limitations identified by Dr. Kreizman, those opinions were from doctors who examined plaintiff only once, or who did not examine plaintiff at all. The point of the treating physician rule was to encourage the ALJ to recognize that a "treating physician is usually more familiar with a claimant's medical condition than are other physicians[.]" *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986).  The ALJ failed to account for Dr. Kreizman's familiarity with plaintiff.  Moreover, Dr. Kreizman's opinions had *at least* some support from the objective medical evidence in the record, including MRIs as far back as 2002 that showed bulging discs, herniated discs, and other problems with plaintiff's back, as

24

well as problems with plaintiff's knee and shoulder.  (*See supra* at 2-3.)

The fact that Dr. Kreizman's treatment began in 2015 meant that his opinions could only be relevant to whether plaintiff was disabled during that time period,[2] but that was not a reason to discount the opinions entirely.  *See Maroulis v. Colvin*, No. 16-cv-2427 (DF), 2017 WL 7245388, at *26 (S.D.N.Y. Jan. 18, 2017) ("[T]he question of whether Plaintiff's allegedly disabling conditions had 'improved' . . . after her onset date [] would, at best, have been relevant to only a portion of the period that was supposed to have been under consideration."). It may have been possible for plaintiff to have been disabled during that time period, but not the prior period, if his condition has worsened.  Thus, the court finds that the ALJ's cursory dismissal of Dr. Kreizman's opinions violated the treating physician rule.

This legal error was compounded when the ALJ accorded "great weight" to a portion of the opinions of Dr. Torres, a consultative examiner.  (*See* Tr. at 17-18.)  The only reasoning provided by the ALJ for ascribing so much weight to part of Dr. Torres's opinion was that it was "consistent with the medical evidence of record."  (*Id.* at 18.)  The ALJ did not explain

---

[2] If there were gaps in the record prior to 2015, the ALJ had an "affirmative duty to develop the administrative record" and "to fill" those gaps. *Burgess*, 537 F.3d at 129.

which specific evidence supported Dr. Torres's opinion, just as he did not explain which evidence contradicted Dr. Kreizman's.

On remand, the ALJ should reconsider the weight assigned to these medical opinions, and cite specific evidence that contradicts or supports them.[3]  The ALJ is reminded that, even if he determines that Dr. Kreizman's opinions are not entitled to "controlling weight," a treating physician's opinion is generally still "entitled to some extra weight" because of the treating physician's "familiar[ity]" with the claimant. *Schisler*, 787 F.2d at 81.

## IV.  After Reconsidering the Medical Opinion Evidence, the ALJ Should Reconsider Plaintiff's Subjective Statements

Finally, plaintiff argues that the ALJ erred by making an adverse finding regarding plaintiff's statements about his own symptoms.  (*See* Pl. Mem. at 16-22.)

The Commissioner's regulations provide a two-step framework for evaluating a claimant's subjective symptoms as part of the RFC analysis: (1) the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that can reasonably be expected to produce the claimant's pain or other symptoms; and (2) the ALJ must then

---

[3] Plaintiff also argues that the ALJ erred by assigning "little weight" to Dr. Trimba's opinions.  (*See* Pl. Mem. at 15-16.)  In light of the court's decision to remand based on the ALJ's handling of Dr. Kreizman's opinions, the court declines to fully evaluate the ALJ's handling of Dr. Trimba's opinions.  However, on remand, the ALJ should reconsider all of the medical opinions, and to cite specific evidence that supports or contradicts them.

evaluate the intensity, persistence and limiting effects of the
claimant's symptoms to determine the extent to which they limit
the claimant's functionality by examining the objective medical
evidence.  20 C.F.R. §§ 404.1529(b).  At the second step, the
ALJ "will" consider the following factors:

> (i) [the claimant's] daily activities; (ii) [t]he
> location, duration, frequency, and intensity of [the
> claimant's] pain or other symptoms; (iii)
> [p]recipitating and aggravating factors; (iv) [t]he
> type, dosage, effectiveness, and side effects of any
> medication . . . taken to alleviate . . . pain or other
> symptoms; (v) [t]reatment, other than medication, . . .
> received for relief of [the] pain or other symptoms;
> (vi) [a]ny measures . . . used to relieve . . . pain or
> other symptoms; and (vii) [o]ther factors concerning
> [the claimaint's] functional limitations and
> restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

Here, the ALJ appeared to properly consider certain
of the relevant factors.  For example, the ALJ found that
plaintiff's daily activities, such as searching for work,
working a part-time job, and completing a computer training
program, suggested that his symptoms may not have been as severe
as he reported.  (Tr. at 19.)  However, the ALJ also asserted,
in conclusory fashion, that the medical opinions did not
"indicat[e] that the claimant [was] currently disabled."  (*Id.*)
After reconsidering the appropriate weight to be applied to each
medical opinion, the ALJ should also reconsider whether the
opinions support plaintiff's alleged symptoms.  Plaintiff's
reported symptoms appear to be consistent at least with Dr.

Kreizman's opinions, and also possibly with the MRIs showing the damage to plaintiff's back, knee, and shoulder.  Thus, the ALJ should reconsider whether the record supports plaintiff's statements after determining how much weight to assign to Dr. Kreizman's opinions.

## **Conclusion**

     For the foregoing reasons, plaintiff's motion for judgment on the pleadings is GRANTED, defendant's motion for judgment on the pleadings in DENIED, and this case is REMANDED for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is directed to enter judgment remanding this case, and to close the case.

**SO ORDERED.**

Dated:     Brooklyn, New York
           January 12, 2021

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge